THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:06-CV-149-FL

| | |
|---|---|
| CRAIG STAMBAUGH and DAVID FLOYD, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) **MEMORANDUM & RECOMMENDATION** |
| MARITRANS, INC., and MARITRANS OPERATING COMPANY, L.P., | ) ) ) ) ) |
| Defendants. | ) |

This matter is before the court on Defendants Maritrans, Inc. and Maritrans Operating Company L.P.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, Motion for Transfer of Venue. [DE-10]. Plaintiffs Craig Stambaugh and David Floyd have responded. [DE-13]. Accordingly this matter is ripe for review.

## STATEMENT OF THE CASE

Defendant Maritrans Operating Company, L.P., a Delaware corporation with a principal place of business in Florida, operated and chartered the tug boat VALOUR. Defendant Maritrans, Inc., also a Delaware corporation with a principal place of business in Florida, is the parent company of Maritrans Operating Company, L.P. Plaintiff Craig Stambaugh was, at the time of the incident, the engineer on board the JUSTINE FOSS. Plaintiff David Floyd was an "Able-Bodied Seaman" on the JUSTINE FOSS. Both Stambaugh and Floyd are residents of Oregon and have brought this action in the Eastern

1

District of North Carolina alleging a claim for marine salvage under admiralty law.

On January 17, 2006, the tug VALOUR was towing a double hulled barge, the MARITRANS 192 (hereinafter "the barge"), carrying approximately 5.7 million gallons of oil about 29 miles off the North Carolina coast. Weather conditions deteriorated throughout the day and around midnight the VALOUR was in extreme distress. To save his vessel and crew, the master of the VALOUR was forced to release the barge. Notwithstanding these efforts, the VALOUR sank, with the loss of two crew members lives.

Learning that the VALOUR and the barge were in trouble, Maritrans Operating Company contracted with Foss Maritime Company, the owner and operator of the tugboat JUSTINE FOSS, which was in the vicinity, to render assistance. The JUSTINE FOSS arrived on the scene after the VALOUR sank, but was able to rescue a number of the VALOUR's crew, and with the help of the Coast Guard, was able to secure the barge. At the direction of the Coast Guard, the JUSTINE FOSS towed the barge to Wilmington, which was the nearest port to the accident.

## DISCUSSION

1.  Personal Jurisdiction

Before turning to any other consideration, the court must determine whether personal jurisdiction exists. Personal jurisdiction involves the relationship of a given defendant to the particular geographic area in which a case is brought, and is necessary for the case to proceed. See, e.g., United States v. Morton, 467 U.S. 822, 828 (1984) (noting that limitations on personal jurisdiction "protect the individual interest that is implicated when a nonresident defendant is haled into a distant and possibly inconvenient forum").

2

In this case, Plaintiffs are residents of Oregon. Defendants are business organizations formed under Delaware law, with their principal places of business in Tampa, Florida. Defendants are non-residents who have conducted no business in North Carolina. Defendants' only contact with the state has been that the JUSTINE FOSS towed the barge MARITRANS 192 to port in Wilmington, North Carolina.

In order to determine whether personal jurisdiction exists over Defendants, the court must engage in a two-step analysis. See Vishay Intertechnology, Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1064 (4th Cir. 1982). In an admiralty case, a court may properly exercise jurisdiction over non-resident defendants, such as the Maritrans Defendants, by first looking at the law of the forum state. Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 343 (5th Cir. 2004). Accordingly, the court must determine if the North Carolina statute regarding personal jurisdiction allows for the exercise of long-arm jurisdiction over Defendants. Vishay Intertechnology, 696 F.2d at 1064. Second, if the court determines that such jurisdiction exists, it must determine if exercising personal jurisdiction over Defendants satisfies due process under the federal Constitution.[1] Id.

### A. Long-Arm Statute

The North Carolina long-arm statute, General Statute section 1-75.4, provides the parameters by which a North Carolina court may exert jurisdiction over a defendant. The

---

[1] North Carolina's long-arm statute has been interpreted to extend to the full extent permitted by the Constitution. See Christian Science Bd. of Dirs. Of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Accordingly the two-prong inquiry under the North Carolina long-arm statute and the due process clause of the Constitution can collapsed into one. Id. However, because both parties argued that section 1-75.4(5)b of the North Carolina General Statutes applies, the court has proceeded through the traditional two-step analysis.

3

parties agree that because Defendants are non-residents who have not conducted business in North Carolina, the only provision of the statute that could possibly provide for personal jurisdiction involves the performing of services by Plaintiffs for Defendants in the state. In pertinent part, the statute provides for jurisdiction, "in any action which . . . arises out of . . . services actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant." N.C. Gen. Stat. § 1-75.4(5)b.

Plaintiffs claim that they provided services to Defendants in the state of North Carolina, which Defendants ratified. Plaintiffs acted to assist the VALOUR when the VALOUR was at sea and in distress, they saved six crew members, and retrieved the barge in international waters, off of the North Carolina coast. After securing the barge, Plaintiffs, on the JUSTINE FOSS, towed the barge to the nearest port, which was in Wilmington, North Carolina. Because Defendants requested and paid the JUSTINE FOSS to aid in its rescue, and because the JUSTINE FOSS retrieved and towed the barge to a North Carolina port, Plaintiffs argue that Defendants "authorized" or "ratified" their actions, and that by towing the barge to Wilmington, the services occurred in North Carolina.

The question then, is whether Plaintiffs' act of towing the barge to Wilmington constitutes services actually performed in North Carolina, and if so, whether they were ratified or authorized by Defendants. Clearly, towing a barge to a North Carolina port constitutes a service. However, Defendants claim that Plaintiffs were ordered by the Coast Guard to tow the barge, which held more than five million gallons of oil, and whose physical integrity might have been compromised by the storm, to the nearest port. As the Coast Guard dictated that the barge be towed to North Carolina, Defendants argue that they did

4

not directly or voluntarily choose to avail themselves of services in this state.

However, Defendants hired Plaintiffs to aid in the rescue of the VALOUR, and to help retrieve the barge. By contracting with the Foss Maritime Company, and requesting that the JUSTINE FOSS come to the aid of the VALOUR and the barge, Defendants authorized the actions of Plaintiffs in furtherance of their rescue mission, including the towing of the barge to Wilmington. The fact that the Coast Guard ordered Plaintiffs to tow the barge to the nearest port does not alter the fact that Defendants requested and paid the Foss Maritime Company to rescue the VALOUR and the barge. Part of the rescue mission involved bringing those vessels to safety. Accordingly, Defendants cannot claim now that they authorized Plaintiffs' actions in rescuing the VALOUR and the barge but retracted that authorization at the point where the JUSTINE FOSS towed the barge to Wilmington. Accordingly, personal jurisdiction under section 1-75.4(5)b of the long-arm statute is satisfied.

### B. Due Process

Nonetheless, the inquiry does not end with an analysis of section 1-75.4(5)b of the North Carolina long-arm statute. The court must also assess whether due process considerations limit personal jurisdiction over these Defendants. The Supreme Court, in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), explained how due process relates to personal jurisdiction:

> [D]ue process requires only that in order to subject defendant to a judgment in personam, if he be not present in the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

When looking at the sufficiency of a defendant's contacts "[t]he touchstone of the minimum

5

contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." <u>Lesnick v. Hollingsworth & Vose Co.</u>, 35 F.3d 939, 945 (4th Cir. 1994) (emphasis added). This standard is not a rigid one, and courts have applied it "on a case by case basis, determining what is fair, reasonable, and just according to the circumstances." <u>Vishay Intertechnology</u>, 696 F.2d at 1068.

An analysis of personal jurisdiction and the due process clause involves a two prong test. A court must consider (1) whether a defendant availed himself of the protections and laws of the forum state, by purposefully directing his actions toward North Carolina sufficient to create a substantial connection, and (2) whether a defendant's connections to North Carolina constitute minimum contacts sufficient to satisfy notions of fair play and substantial justice. <u>See</u> <u>Lesnick v. Hollingsworth & Vose Co.</u>, 35 F.3d 939, 945-46 (4th Cir. 1994).

The first prong of the above test requires a substantial connection between Defendants and North Carolina. Here, the only contact that Defendants had with North Carolina was when the JUSTINE FOSS towed the barge that the VALOUR was originally towing, to the port in Wilmington. Minimum contacts requires that "the Defendants' actions . . . be directed at the forum state in more than a random, fortuitous, or attenuated way." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985). In this case, Defendants have not purposefully directed their actions toward North Carolina. They have no facilities, assets, or employees in the state; they conduct no activities and sell no products, either directly or indirectly in the state; they have no registered agent for service of process in the state; they are not licensed to do business in the state; and they do not have any bank accounts or property in the state. Accordingly, Defendants have not engaged in activity

6

that would create a substantial connection to North Carolina, even assuming that they authorized the JUSTINE FOSS to tow the barge to Wilmington. Therefore, the first prong of the test is not met.

The second prong of the due process analysis involves fairness considerations, including, "(a) the burden on the defendant, (b) the interest of the forum state, (c) the plaintiff's interest in obtaining relief," among others. Lesnick, 35 F.3d at 945-46. Here, Defendants are not residents of North Carolina, and have no business association or other connection, except for the towing of the barge to Wilmington, with the state. Moreover, Defendants' principal places of business are in Florida, in which their offices and records are all located. Accordingly, the burden on Defendants to defend in North Carolina is great.

North Carolina has some interest, although not a sufficiently significant one, in hearing the case. The potential environmental ramifications of towing a barge containing more than five million gallons of oil to a North Carolina port are serious. However, in a North Carolina case involving the disposal of chemical wastes, the court concluded that personal jurisdiction did not exist for a defendant corporation incorporated in South Carolina without sufficient contacts to North Carolina. See Crown, Cork & Seal Co., Inc. v. Dockery, 886 F.Supp. 1253, 1259 (M.D.N.C. 1995). The court held that although the defendant hired a waste disposal company to dispose of its waste, and the disposal company hauled the waste to North Carolina, resulting in serious pollution and contamination of the North Carolina site, the defendant had not engaged in conduct that was specifically directed toward the state of North Carolina. Id. Accordingly, although North Carolina certainly has an interest in protecting the integrity of its environmental

7

surroundings, such an interest does not override the fact that Defendants do not have the minimum contacts necessary to support personal jurisdiction in the state. Id. Moreover, there are other fairness considerations that weigh against proceeding in North Carolina. Neither Plaintiffs nor Defendants are residents of North Carolina. Further, Plaintiffs have not asserted a claim under North Carolina law, instead they have raised a purely federal claim under admiralty law. Although some part of Plaintiffs' rescue operation arguably took place in North Carolina, to the extent that the barge was towed into North Carolina waters and to port in Wilmington, that action alone does not create a compelling interest on the part of the state to hear these claims. Finally, Plaintiffs have an interest in having their claims heard. However, that interest does not necessitate that the claims be heard in North Carolina.

Accordingly, it is the court's opinion that personal jurisdiction in North Carolina is not proper and that Defendant's motion to dismiss should be GRANTED.

2. Venue

Because the court recommends that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction be granted, venue, too, is inappropriate. Venue is appropriate in admiralty cases, where personal jurisdiction also exists. See In re Louisville Underwriters, 134 U.S. 488, 490 (1890); Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 31 n.5 (3d Cir. 1993) (noting that an admiralty action may be brought against a defendant where personal jurisdiction exists over that defendant). This case is one based solely in maritime jurisdiction, accordingly, the statutory venue provisions of 28 U.S.C. § 1391(b) do not apply. See 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3242 (2007) (stating that admiralty and maritime claims are not to be treated as civil

8

actions under the general venue statutes).

Under 28 U.S.C. § 1406(a), a district court must dismiss or transfer an action before it in which venue is improper. As discussed above, venue in North Carolina is not appropriate. Accordingly, the court must determine whether to transfer this case to another court. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) (noting that a court may transfer a case brought in an improper venue, whether or not it has personal jurisdiction over the defendant). In their pleadings, Plaintiffs have not specified an alternate court in which they contend jurisdiction and venue are proper. Accordingly, the court recommends that the case should not be transferred at this time. The court notes that in salvage actions arising under admiralty law, plaintiffs have two years in which to bring an action. See 46 U.S.C. § 80107(c). Here, the JUSTINE FOSS towed the barge to Wilmington, North Carolina on January 19, 2006. Accordingly, Plaintiffs' window of opportunity to bring suit in an alternate forum has not yet expired and that transfer of the case is inappropriate at this time. For those reasons, the court finds that venue is improper in this court and that the case should be dismissed and not transferred.[2]

## CONCLUSION

Accordingly, the court **RECOMMENDS** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue

---

[2] In the interests of justice, were a statute of limitations problem to exist, the court's recommendation to dismiss rather than transfer, would likely be different.

covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 30th day of April, 2007.

DAVID W. DANIEL
United States Magistrate Judge